IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARLENE A. BELL,<br><br>    Plaintiff,<br><br>v.<br><br>METHODIST HEALTHCARE MEMPHIS<br>HOSPITALS, aka METHODIST<br>HEALTHCARE GERMANTOWN, aka<br>METHODIST LEBONHEUR GERMANTOWN<br>HOSPITAL, aka METHODIST<br>HEALTHCARE CORPORATION, aka<br>METHODIST LEBONHEUR<br>HEALTHCARE, aka LEBONHEUR<br>CHILDREN'S HOSPITAL,<br><br>    Defendant. | No. 2:11-cv-02755-JPM-cgc |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant's Motion for Summary Judgment, which was filed on October 11, 2012. (ECF No. 25.) Plaintiff responded in opposition on November 2, 2012. (ECF No. 26.) Defendant replied in support of its Motion on November 15, 2012. (ECF No. 27.)

For the reasons stated below, Defendant's Motion for Summary Judgment (ECF No. 25) is GRANTED.

## I.    BACKGROUND

In its current posture, this case involves claims of discrimination arising from Defendant's termination of Plaintiff's employment under the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. §§ 12101-12213 (2006), and the

Tennessee Human Rights Act (the "THRA"), Tenn. Code Ann. §§ 4-21-101 to 4-21-1004 (2012).  (Order Granting Def.'s Mot. for Partial J. on the Pleadings, ECF No. 22, at 26.)  The following facts are undisputed for the purposes of this Motion unless otherwise indicated.[1]

On or about August 19, 1991, Defendant Methodist Healthcare Memphis Hospitals ("Defendant") hired Plaintiff Marlene A. Bell ("Plaintiff" or "Bell") as a Registered Nurse ("RN").[2]  (Compl., ECF No. 1, at 4.)  In or about 1996, Plaintiff was involved in a car accident that she believes caused her disability, which is fibromyalgia and related complications.  (Id. ¶ 4.)  On May 6, 2001, Plaintiff transferred to Defendant's Same Day Surgery A Unit, which is located in Methodist Germantown Hospital.  (Def.'s Statement of Material Facts Which Are Not Genuinely Disputed ("Undisputed Facts"), ECF No. 25-1, ¶ 10.)

In the Same Day Surgery A Unit, an RN is responsible for the following duties:

---

[1] "Failure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."  LR 56.1(d); see also Nat'l Bd. of Med. Exam'rs v. Optima Univ. LLC, No. 1:09-cv-01043, 2011 WL 7615071, at *1 n.1 (W.D. Tenn. Sept. 29, 2011).  Defendant submitted a Statement of Material Facts Which Are Not Genuinely Disputed (ECF No. 25-1), but Plaintiff did not respond to that statement in conformity with the format set out in Local Rule 56.1(b) (see ECF No. 27).  Rather, Plaintiff submitted only a memorandum, a declaration, and deposition excerpts.  (See id.)  As a result, the facts asserted in Defendant's Statement of Material Facts Which Are Not Genuinely Disputed (ECF No. 25-1) "are not disputed for purposes of summary judgment."  See LR 56.1(d).
[2] This fact was taken from the Complaint.

- [Bell's] written Job Description for [RN] summarizes generally that an RN is "responsible for the nursing care of patients requiring substantial specialized judgment and skill." As an RN in Same Day Surgery A, [Bell] was responsible for, among other things, timely and competent us [sic] of the Cerner electronic medical records system; prompt and thorough obtaining of all necessary patient information and history which includes such things as medications, medical conditions, and previous surgeries; prompt and thorough physical assessment of the surgery patient including such things as a skin assessment; performing all pre-admission procedures and tasks promptly so as to maintain the pace of the unit's work flow and daily schedule of surgeries.

  (Id. ¶ 11 (citations omitted).)

- The Same Day A RN must have both technical knowledge and critical thinking skills to be able to continuously analyze and appropriately act on the information received and their own observations. While the unit's management expects an RN's communications with patients, patient family members, physicians and co-workers to be friendly and pleasant, the essential requirements are that all work communications should be focused, prompt, and achieve the goal of receiving and conveying that information which is actually necessary to the pre-op and post-op processes.

  (Id. ¶ 12 (citation omitted).)

- At Methodist Germantown, Same Day Surgery A is responsible for the pre-op preparation of patients for all types of surgeries, including those in which the patient will leave the same day and surgeries which result in hospital stays. Same Day A nurses are also responsible for the post-op care of patients who are leaving the same day after their procedures. The unit nurses utilized a rotation "board" in taking their turn to handle the next patient. The pace is hectic at times.

  (Id. ¶ 13 (citations omitted).)

From June 18, 2002, Bell's performance of her duties was reflected in the following occurrences:

- On June 18, 2002, Bell received an annual Performance Evaluation from her direct supervisor, Lisa McCarver, indicating that her "initial paperwork [was] often incomplete," that she "needs to be more organized and use her time wisely," that she "needs to focus on her job while here – talks about personal problems and on [sic] phone too much," that she "needs to be on time and respect break times and lunch – report on time," that she "needs to focus on her job while she is here – she has to be reminded when it's her turn to receive a patient for admission or post-op, she spends too much time talking about personal problems to peers and on the phone," and that she "needs to be organized and thorough [sic] follow through on tasks." (Id. ¶ 17 (internal quotation marks omitted); see also id. ¶ 15.) "Plaintiff recalls being counseled about spending too much time talking about personal problems and with peers and on the phone and about her need to be organized and follow through on tasks." (Id. ¶ 17.)

- On January 30, 2004, and February 3, 2004, Bell was informally counseled for falling asleep during a staff meeting. Bell was also counseled for not picking up a

call from a doctor that had been paged because Bell was making a personal phone call at the time, and Bell was informed that "this had been an ongoing problem." (<u>Id.</u> ¶ 15.)

- "On July 27, 2004, Bell received an annual Performance Evaluation indicating that she 'needs to work on time management, both in attendance and patient care.'" (<u>Id.</u> ¶ 17.)

- On June 24, 2005, Bell received an annual Performance Evaluation indicating that she "'needs improvement' in initial patient assessments." (<u>Id.</u> ¶ 15.) That Performance Evaluation stated that Bell "needs to focus on tasks and concentrate to document in an accurate and timely manner," that she needs to "[a]ctively listen to the patient's answers so you don't ask the same questions over again . . . listen to customers [sic] pay attention," and that she needs to "[s]top using business phones for personal use, you are [sic] overheard by staff and pts [sic] and it's unprofessional dialogue." (<u>Id.</u> (internal quotation marks omitted).) Bell recalls her supervisor "talking to her about her unprofessional dialogue and agrees that it was unprofessional," and "admits that she was counseled about staying focused and to not discuss

5

[sic] her own personal medical problems with patients."
(<u>Id.</u> ¶¶ 15-16.)

- On July 28, 2006, Bell received a written warning for
  "leaving narcotics unattended and failing to secure them."
  (<u>Id.</u> ¶ 18.)  The written warning stated:  "[Bell] must
  exhibit sound professional judgment.  Policy must be
  followed for safety of patients and staff in this unit.
  She must focus on tasks and assure they are complete and
  timely."  (<u>Id.</u> (internal quotation marks omitted).)

- "In 2007 and 2008, Plaintiff was informally counseled by
  Kathy Robertson," who succeeded Lisa McCarver as Bell's
  direct supervisor, "concerning failure to complete an
  assessment in Cerner; failure to notice an infected sore,
  resulting in waste of time and surgical preparation; and
  was given a self-competition exercise to assist [Bell] in
  improving the pace of her patient assessments."[3]  (<u>Id.</u>
  ¶ 19.)

- "On a number of occasions Memphis Anesthesia Group . . .
  physicians and staff expressed concerns to unit management
  that [Bell's] slowness delayed their cases, that she
  sometimes repeated questions or made inappropriate

---

[3] In her Response, Bell cites the Affidavit of Mary Kathryn Sipes, RN.  (Pl.'s
Resp., ECF No. 26, at 11, 16-23.)  Mary Kathryn Sipes, RN, was known as
"Kathy" Robertson when she was Bell's direct supervisor from March 18, 2007
to October 1, 2008.  (Mathis Decl., ECF No. 27-1, ¶ 2.)  "As a result of
marriage, Mary Kathryn Robertson's name changed to Mary Kathryn Sipes."
(<u>Id.</u>)

comments when Anesthesia was in the room with a patient, and that she at times seemed 'dazed' or confused." (<u>Id.</u> ¶ 23.)

- Since October of 2008, when Cynthia Bacon became Bell's direct supervisor, "Ms. Bacon received more physician and co-worker complaints about Ms. Bell than about any other employee in her supervision." (<u>Id.</u> ¶¶ 20, 23.)

- In 2009, Bell received an annual Performance Evaluation indicating that she "'needs improvement' in patient assessments and not getting distracted." (<u>Id.</u> ¶ 20.)

- On July 10, 2009, Bell received a written warning

> concerning [Bell's] slow pace in completing assessments and poor judgment regarding over-medication of a small [sic] 79 year old [sic] patient which created a danger of respiratory arrest. [Bell's] explanation was [sic] she had asked the patient's family about the dosage of Phenergan, and they thought it would be okay.

> (<u>Id.</u> ¶ 21 (citations omitted).)

- In 2010, Bell received an annual Performance Evaluation indicating that she

> "needs improvement" in patient assessments and not getting distracted. The 2010 evaluation gave an overall "needs improvement" rating and noted [Bell's] failure to assess skin at the surgical site on another occasion, patients questioning [Bell's] demeanor, Anesthesia voicing concerns over her slowness and judgment, and [Bell] being "foggy". [sic] It was noted that [Bell] failed to keep the flow of the

7

> unit by her slowness, failed to identify a
> medication as a beta blocker as required by
> CMS protocol, [sic] co-workers resented
> having to skip her name in rotations because
> she did not keep pace, and a pattern of
> improving temporarily and falling back into
> "old habits". [sic]

(Id. ¶ 20 (citations omitted).)

- "On February 4, 2010, [Bell] received [sic] formal Final

  Written Warning for continued unacceptable job performance

  and customer service safety issues." (Id. ¶ 22.)  This

  document is entitled "Corrective Action" and has the box

  checked indicating that it was a "Final Written Warning."

  (Bell Dep. Ex. 11, ECF No. 25-8 at 29-30.)  The reasons

  for the final Written Warning are that:

  > A patient had voiced concern to another
  > nurse concerning [Bell's] mental confusion,
  > a charge nurse reported that [Bell] had
  > difficulty in setting up an IV pump for a
  > basic infusion and seemed confused, co-
  > workers expressed concern that Ms. Bell made
  > inappropriate comments and [sic] questions
  > during a tour of an OR Suite, there were
  > continued problems with assessments being
  > too slow, and [Bell] had missed an abrasion
  > on an operative site of a total knee
  > replacement [sic] patient which . . . was
  > later discovered by another nurse before the
  > patient was taken for surgery.

  (Undisputed Facts, ECF No. 25-1, ¶ 22.)

- On August 20, 2010,[4]

---

[4] The date of this incident is not in the Undisputed Facts, but it is in the
document cited in the Undisputed Facts.  (Undisputed Facts, ECF No. 25-1,
¶ 25; see also Bacon Decl. Ex. A, ECF No. 25-3, at 11.)

> [t]he last event causing Ms. Bacon and Ms.
> Thorne to seek Human Resources approval of
> termination [occurred and] concerned a
> serious breach of sterile technique reported
> by a charge nurse and another nurse, in
> which [Bell] was reported to have attempted
> to prime a needle for a port-a-cath while in
> the hallway rather than at bedside and was
> [sic] not wearing sterile gloves. Bacon and
> Thorne personally interviewed the charge
> nurse and [sic] other nurse and also
> questioned [Bell] who told them, "well, I
> stopped when she told me I was wrong."

(Id. ¶ 24 (citation omitted); see also Bacon Decl. Ex. A,

ECF No. 25-3 at 11.)

> Following the report of the port-a-cath
> incident, Ms. Bacon prepared a three-page
> summary for the Germantown Hospital Human
> Resources Director Robin Mathis to provide
> pertinent facts for seeking approval from
> Corporate Human Resources to terminate
> [Bell], whose termination as a ten-plus year
> [sic] associate would require Corporate
> approval. The report included specific
> patient safety concerns, failures to follow
> physician orders, unacceptable slowness in
> admissions and failures to note skin
> problems during pre-op assessments, repeated
> complaints by physicians and co-workers and
> concerns about [Bell] appearing "confused".
> [sic] Based on her observations and
> discussions with [Bell] and information from
> other healthcare team members, Ms. Bacon
> believed that her summary was true and
> accurate.

(Undisputed Facts, ECF No. 25-1, ¶ 25 (citations omitted);

see also Bacon Decl. Ex. A, ECF No. 25-3 at 11.)

On September 8, 2010, Defendant terminated Bell's

employment. (Undisputed Facts, ECF No. 25-1, ¶ 2.) After her

9

termination, Bell sought only one other nursing position

"[b]ecause of her condition."  (Id. ¶ 6.)  As she described it

in her deposition, she sought only one nursing position

"because I couldn't find anything that I thought would really

work for me.  Either the hours wouldn't be right or it would be

very hard with my disabilities to do those type [sic] jobs in

the thing that I saw."  (Id.)

      "Within a week or two following her separation, Plaintiff

applied for federal disability benefits with the Social Security

Administration and was approved to begin receiving disability

benefits in March, 2011."  (Id. ¶ 5.)  Plaintiff's Notice of

Award from the Social Security Administration[5] states that:

> You are due disability benefits because you are
> expected to be disabled under our rules for at least 5
> full calendar months.  Therefore, you should let us
> know if your health improves or you are able to return
> to work.
>
> The decisions we made on your claim are based on
> information you gave us.  If this information changes,
> it could affect your benefits.  For this reason, it is
> important that you report changes to us right away.

(ECF No. 25-7 at 1.)

      On September 1, 2011, Bell filed a Complaint with this

Court.  (ECF No. 1.)  On July 17, 2012, the Court entered an

Order granting partial judgment to Defendant on the pleadings.

---

[5] Defendant cites to Plaintiff's Notice of Award from the Social Security
Administration in the Undisputed Facts, and Plaintiff does not dispute the
document's authenticity.  (See Undisputed Facts, ECF No. 25-1, ¶ 5; see also
Bell Decl. Ex. 1, ECF No. 25-7 at 1.)

(ECF No. 22.)  As a result of that Order, the only claims
potentially remaining in this case are the following:  (1)
claims pursuant to the THRA that accrued on or after September
1, 2010; and (2) claims of discrimination pursuant to the ADA
that accrued after December 8, 2009.  (Id. at 26.)

On September 26, 2012, Bell gave a deposition in which she
testified that she is only suing for disability discrimination.
"Plaintiff was asked whether she claimed any other types of
discrimination including race, gender religion, age, or genetic
disposition, and answered 'no, nothing like that.'"  (Undisputed
Facts, ECF No. 25-1, ¶ 2; see also Bell Dep. at 48:11-18, ECF
No. 25-5 at 13.)  Bell's position was also reiterated in the
following exchange from her deposition:  "Q: So it is, this
lawsuit you're suing for disability discrimination?  A:  Yes."
(Undisputed Facts, ECF No. 25-1, ¶ 2; see also Bell Dep. at
48:19-21, ECF No. 25-5 at 13.)

## II.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a); see also Chapman v. UAW Local 1005, 670 F.3d 677,
680 (6th Cir. 2012).  "A fact is 'material' for purposes of
summary judgment if proof of that fact would establish or refute
an essential element of the cause of action or defense."

11

Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir.
2012). "A dispute over material facts is 'genuine' 'if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party.'" Id. (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)). "When the non-moving
party fails to make a sufficient showing of an essential element
of his case on which he bears the burden of proof, the moving
parties are entitled to judgment as a matter of law and summary
judgment is proper." Chapman, 670 F.3d at 680 (citing Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

     "The moving party bears the initial burden of demonstrating
the absence of any genuine issue of material fact." Mosholder
v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex
Corp., 477 U.S. at 323). "Once the moving party satisfies its
initial burden, the burden shifts to the nonmoving party to set
forth specific facts showing a triable issue of material fact."
Id. at 448-49 (citing Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986)).

     "To show that a fact is, or is not, genuinely disputed,
both parties are required to either 'cite[] to particular parts
of materials in the record' or 'show[] that the materials cited
do not establish the absence or presence of a genuine dispute,
or that an adverse party cannot produce admissible evidence to
support the fact.'" Bruederle, 687 F.3d at 776 (alterations in

12

original) (quoting Fed. R. Civ. P. 56(c)(1)); see also

Mosholder, 679 F.3d at 448 ("To support its motion, the moving

party may show 'that there is an absence of evidence to support

the nonmoving party's case.'").

        "The court need consider only the cited materials, but it

may consider other materials in the record."  Fed. R. Civ. P.

56(c)(3); see also Emerson v. Novartis Pharm. Corp., 446 F.

App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs,

hunting for truffles' that might be buried in the record.");

Chi. Title Ins. Corp. v. Magnuson, 487 F.3d 985, 995 (6th Cir.

2007) ("A district court is not required to 'search the entire

record to establish that it is bereft of a genuine issue of

material fact.'").

        "In considering a motion for summary judgment, [a court]

must draw all reasonable inferences in favor of the nonmoving

party."  Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725,

730 (6th Cir. 2012) (citing Matsushita Elec. Indus. Co., 475

U.S. at 587).  "The central issue is 'whether the evidence

presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail

as a matter of law.'"  Id. (quoting Anderson, 477 U.S. at 251-

52).  "[A] mere 'scintilla' of evidence in support of the non-

moving party's position is insufficient to defeat summary

judgment; rather, the non-moving party must present evidence

upon which a reasonable jury could find in her favor." Tingle
v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012)
(quoting Anderson, 477 U.S. at 252).

**III. ANALYSIS**

The only claims potentially remaining in this case are the
following:  (1) claims pursuant to the THRA that accrued on or
after September 1, 2010; and (2) claims of discrimination
pursuant to the ADA that accrued after December 8, 2009.  (Order
Granting Def.'s Mot. for Partial J. on the Pleadings, ECF
No. 22, at 26.)  Plaintiff's potential THRA claims and
Plaintiff's potential ADA claims are addressed in turn.

**A.   Plaintiff Abandoned Any Claims Made Pursuant to the THRA
     that Accrued on or After September 1, 2010.**

In her Complaint, the only cause of action that Plaintiff
states pursuant to the THRA is for age discrimination.  (See ECF
No. 1 at 6-7.)  "[A]s a cause of action [Plaintiff] would state"
that "Defendant terminated Plaintiff because of her age and
thereby violated her right to equal employment opportunity as
protected by the [THRA]."  (Id.)

Defendant argues that Plaintiff testified in her September
26, 2012, deposition that "Plaintiff clearly answered that she
is only claiming discrimination because of medical problems or
disability and not because of age."  (Def.'s Mem. in Supp., ECF
No. 25-2 at 2.)  Defendant also argues that Plaintiff cannot

14

make a prima facie claim for age discrimination under the THRA because "there is no evidence that Plaintiff's vacated position was filled by a substantially younger person or that a substantially younger person who was similarly situated to Plaintiff was treated differently under comparable circumstances." (Id. at 12.)  Finally, Defendant argues that Plaintiff cannot show that Defendant's reason for terminating Plaintiff's employment - the "honest belief that she was an unsafe nurse and detrimental to the functioning of the unit" - was a pretext.  (Id.)

Plaintiff does not argue that she has not abandoned her THRA claims.  Plaintiff does not dispute her deposition testimony (Undisputed Facts, ECF No. 25-1, ¶ 2) or make any argument regarding the THRA (see Pl.'s Resp., ECF No. 26). Plaintiff only makes an argument, and cites evidence, in reference to her claim for disability discrimination in violation of the ADA.  (Id. at 3.)

The Court, therefore, finds that Plaintiff abandoned any claims made pursuant to the THRA that accrued on or after September 1, 2010.  See Saieg v. City of Dearborn, 641 F.3d 727, 741 (6th Cir. 2011) (acknowledging that the plaintiff had abandoned his free-exercise claim before the district court); Chapman v. S. Natural Gas Co., No. 3:09-CV-224, 2011 WL 883918, at *1 n.1 (E.D. Tenn. Mar. 11, 2011) (holding that the plaintiff

abandoned claims by not addressing them in his response to the defendant's motion for summary judgment).

**B.    Defendant Is Entitled to Summary Judgment on Claims Made Pursuant to the ADA that Accrued After December 8, 2009.**

The ADA prohibits certain entities from "discriminat[ing] against a <u>qualified individual</u> on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112 (2006) (emphasis added).

As a result, regardless of whether a plaintiff relies on direct or indirect evidence of discrimination,[6] the plaintiff must show that she was "otherwise qualified" for her employment position.  <u>See, e.g.</u>, <u>Whitfield v. Tennessee</u>, 639 F.3d 253, 258-59 (6th Cir. 2011) (indirect evidence); <u>Kleiber v. Honda of Am. Mfg., Inc.</u>, 485 F.3d 862, 869 (6th Cir. 2007) (direct evidence). In order to determine if the plaintiff was "otherwise qualified" for her employment position, courts rely on the definition of a "qualified individual" in the ADA.  <u>See</u> <u>Rosebrough v. Buckeye</u>

---

[6] Plaintiff indicates that she has submitted direct evidence of discrimination.  (Pl.'s Resp., ECF No. 26, at 11.)  Plaintiff, however, argues in the body of her Response that she has satisfied the legal test applicable to a plaintiff that relies on indirect evidence.  (<u>Id.</u> at 4.) Regardless of whether Plaintiff relies on direct or indirect evidence, Plaintiff does not "set forth specific facts showing a triable issue of material fact" regarding whether she was otherwise qualified for her employment position.  <u>See</u> <u>Mosholder</u>, 679 F.3d at 448-49; <u>see also</u> discussion <u>infra</u> Parts III.B.2.-III.B.3.

<u>Valley High Sch.</u>, 690 F.3d 427, 431–32 (6th Cir. 2012).  The ADA defines a "qualified individual" as follows:

> The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the <u>essential functions</u> of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8) (2006) (emphasis added).

In the case presently before this Court, there is no claim for reasonable accommodation.  (Order, ECF No. 22, at 16–17; Undisputed Facts, ECF No. 25-1, ¶ 1; <u>see also</u> Def.'s Mem. in Supp., ECF No. 25-2, at 5; Pl.'s Resp., ECF No. 26, at 4.)  As a result, the Court will consider whether Plaintiff was otherwise qualified for her employment position without a reasonable accommodation.

The Court first determines, for the purposes of this Motion, the essential functions of Plaintiff's employment position.  The Court then considers whether the parties have met their respective summary-judgment burdens regarding whether Plaintiff was otherwise qualified for her employment position. Finally, the Court determines whether Defendant is entitled to summary judgment.

1.   **The Essential Functions of Plaintiff's Employment Are Not Disputed.**

In its Memorandum of Facts and Law in Support of Motion for Summary Judgment, Defendant states that:

> the essential functions of an RN in the Same Day Surgery A Unit included being responsible for the nursing case [sic] of patients requiring substantial specialized judgment and skill; timely and competent use of the Cerner electronic medical records system; prompt and thorough obtaining of necessary patient information and history including medications, medical conditions and previous surgeries; prompt and thorough physical assessment of the surgery patient including such things as a skin assessment; performing all pre-admission procedures and tasks promptly so as to maintain the unit's work pace and daily schedule of surgeries; having the knowledge and critical thinking skills to be able continuously to analyze and appropriately act on information received and their own observations; being able to communicate in a focused, [sic] and prompt manner which achieves the goals of receiving and conveying that information which is actually necessary to the pre-op and post-op processes.

(ECF 25-2 at 6-7.)  Defendant's statement is supported by the undisputed facts (see Undisputed Facts, ECF No. 25-1, ¶¶ 11-13) and the record (see Bacon Decl. ¶ 4, ECF No. 25-3 at 2-3).

In her Response, Plaintiff does not contest Defendant's statement of the essential functions of Plaintiff's employment position.  (See Pl.'s Resp., ECF No. 26.)

As a result, the Court considers it undisputed that the essential functions of Plaintiff's employment position are those stated by Defendant in its Memorandum of Facts and Law in

Support of Motion for Summary Judgment.  <u>See</u> Fed. R. Civ. P.
56(e)(2).

>   **2.  Defendant Has Met Its, but Plaintiff Has Not Met Her, Summary-Judgment Burden Regarding Whether Plaintiff Was Otherwise Qualified for Her Employment Position.**

In light of the essential functions of Plaintiff's
employment, the Court considers whether the parties have met
their respective summary-judgment burdens regarding whether
Plaintiff was otherwise qualified for her employment position.
The Defendant's burden and the Plaintiff's burden are considered
in turn.

>   **a.  Defendant Met Its Summary-Judgment Burden.**

In its Memorandum of Facts and Law in Support of Motion for
Summary Judgment, Defendant argues that "Plaintiff was unable to
perform [the] essential functions [of her employment position]
on an ongoing and satisfactory basis." (ECF No. 25-2 at 7.)

First, it is undisputed that, for a period of eight years
before her termination, Plaintiff received numerous written and
oral indications that she was not performing the essential
functions of her employment position. (Undisputed Facts, ECF
No.25-1, ¶¶ 15-25); <u>see also</u> discussion <u>supra</u> Part III.B.1.

Second, it is undisputed that Plaintiff applied for only
one nursing position after her termination "[b]ecause of her
condition." (Undisputed Facts, ECF No.25-1, ¶ 6.)
Specifically, "Plaintiff did not seek any other nursing

positions, 'because I couldn't find anything that I thought
would really work for me.  Either the hours wouldn't be right or
it would be very hard with my disabilities to do those type
[sic] jobs in the thing that I saw.'"  (Id.)

Finally, it is undisputed that "[w]ithin a week or two
following her separation, Plaintiff applied for federal
disability benefits with the Social Security Administration and
was approved to begin receiving disability benefits in March,
2011."  (Undisputed Facts, ECF 25-1, ¶ 5.)  Plaintiff's Notice
of Award from the Social Security Administration states that:
"You are due disability benefits because you are expected to be
disabled under our rules for at least 5 full calendar months.
Therefore, you should let us know if your health improves or you
are able to return to work."  (ECF No. 25-7 at 1.)  It also
states that "[t]he decisions we made on your claim are based on
information you gave us."  (Id.)

Defendant therefore cites evidence suggesting an obvious
inconsistency.  Plaintiff claims that she was otherwise
qualified for her position, but within two weeks of being
terminated she gave information to the Social Security
Administration that led it to conclude that Plaintiff was unable
to work due to her disability.  While her receipt of disability
benefits does not preclude a finding that Plaintiff was
otherwise qualified for her position with Defendant, Plaintiff

must explain this seeming contradiction.  See Cleveland v.
Policy Mgmt. Sys. Corp., 526 U.S. 795, 797-98, 805-07 (1999);
Kiely v. Heartland Rehab. Servs., Inc., 359 F.3d 386, 389-91
(6th Cir. 2004).

The Court, therefore, finds that Defendant has met its
"initial burden of demonstrating the absence of any genuine
issue of material fact" regarding whether Plaintiff was
otherwise qualified for her employment position.  Mosholder, 679
F.3d at 448.  "[T]he burden[, therefore,] shifts to the
nonmoving party to set forth specific facts showing a triable
issue of material fact."  Id. at 448-49

**b.  Plaintiff Has Not Met Her Summary-Judgment Burden.**

Plaintiff asserts that she establishes the elements of a
discrimination claim based on indirect evidence.  (See Pl.'s
Resp., ECF No. 26, at 4.)  Plaintiff, however, does not "set
forth specific facts showing a triable issue of material fact"
regarding whether Plaintiff was otherwise qualified for her
employment position.  See Mosholder, 679 F.3d at 448-49.

First, Plaintiff offers no explanation for the
inconsistency indicated by the Notice of Award from the Social
Security Administration.  Plaintiff should have offered some
explanation for this apparent inconsistency.  See Policy Mgmt.
Sys. Corp., 526 U.S. at 807; Kiely, 359 F.3d at 389-91.

Second, Plaintiff's citation to the affidavit testimony of Kathryn Sipes is irrelevant to whether Plaintiff was otherwise qualified for her employment position.  Plaintiff cites to Kathryn Sipes's affidavit to show that "Bell was discriminated against almost daily by management of Defendant" and that the "discrimination was based upon Ms. Bell's medical disabilities." (Pl.'s Resp., ECF No. 26, at 11.)  The citation to Kathryn Sipes's affidavit testimony, therefore, does not show that Plaintiff was otherwise qualified for her employment position.

Finally, while Plaintiff does cite to the deposition of Karol Thorne ("Thorne"), Plaintiff does not indicate which citations show a triable issue of material fact regarding whether she was otherwise qualified for her employment position. It is, therefore, unclear if Plaintiff actually addresses this point.  The Court, however, "must draw all reasonable inferences in favor of the nonmoving party."  Phelps, 680 F.3d at 730.

If the Court considers the evidence that is reasonably relevant to whether Plaintiff was otherwise qualified for her employment position, Plaintiff's citations are insufficient to show a triable issue of material fact.  The Court considers the following evidence in turn:  (i) citations that might undermine the credibility of Defendant's documentation; (ii) citations that might show that Plaintiff was denied training and resources; (iii) citations relevant to whether Plaintiff did

22

perform her employment duties in a timely manner; and (iv) citations regarding Defendant's documentation, training and resources, and timeliness taken as a whole.

### i. Plaintiff's Citations Regarding the Credibility of Defendant's Documentation Are Insufficient To Show a Triable Issue of Material Fact.

Plaintiff cites various parts of Thorne's deposition in an attempt to undermine the reliability of Defendant's documentation.  (See Pl.'s Resp., ECF No. 26.)

First, Plaintiff cites deposition testimony that indicates that there is no documentation of Plaintiff's infractions other than the written warnings received by Plaintiff, and that there is no documentation of complaints by third parties.  (Pl.'s Resp., ECF No. 26, at 4, 9.)  It is undisputed, however, that Plaintiff was informally counseled for not adequately performing essential functions of her employment on at least two occasions. (Undisputed Facts, ECF No. 25-1, ¶ 19.)  It is also undisputed that "[o]n a number of occasions Memphis Anesthesia Group . . . physicians and staff expressed concerns to unit management that Plaintiff's slowness delayed their cases" and that "Bacon received more physician and co-worker complaints about [Plaintiff] than about any other employee in [Bacon's] supervision."  (Id. ¶ 23.)

Second, Plaintiff cites to deposition testimony suggesting that not all of Defendant's infractions were formally

documented, even if the incident was considered serious.  (Pl.'s
Resp., ECF No. 26, at 9-10.)  Plaintiff, however, has merely
succeeded in further supporting Defendant's claim that Plaintiff
was not otherwise qualified:  in addition to the documented
instances of infractions, there are numerous infractions that
were not formally documented.

Third, Plaintiff also cites to a document entitled
"Corrective Action," which was given to Plaintiff on February 4,
2010 (Bell Dep. Ex. 11, ECF No. 25-8 at 29-30).  (Pl.'s Resp.,
ECF No. 26 at 10.)  Plaintiff argues that "it was determined
that Ms. Bell was not the cause of the patient receiving a foley
catheter," but "she still had a corrective action in her file
that remained active" and that "this corrective action was
included in her annual evaluation and never edited out."  (Id.)
Plaintiff refers to the annual evaluation dated April 27, 2010.
(ECF No. 25-8 at 32-41.)

Plaintiff, however, mischaracterizes the record.  The
incident that Plaintiff refers to was not documented in the
Corrective Action dated February 4, 2010.  (See ECF No. 25-8 at
29-30.)  Rather, the incident occurred on March 19, 2010, and
was addressed in an email dated March 22, 2010.  (See Bell Dep.
Ex. 12, ECF No. 25-8 at 31; see also Thorne Dep. at 96-99, ECF
No. 26-1 at 97-100.)  As a result, there was no "corrective
action" that was pending, or included in the performance

24

evaluation, despite Plaintiff being cleared of the conduct at issue.

Furthermore, Plaintiff argues that the following comments were not subsequently edited out of Plaintiff's annual evaluation after an investigation cleared Plaintiff of any wrongdoing: "Tailors care to fit individual needs. Involves patient and family in care but often wanders off the subject. Failed to keep patient safe by not giving proper handoff. Did not investigate requirements for patient device." (See Pl.'s Resp., ECF No. 26, at 10; Thorne Dep. 26-1 at 99:1-16, ECF No. 26-1 at 100.) Thorne, however, did state in her deposition that "I did find documentation, but I felt like the need to hand that information off better would have assisted this patient." (Thorne Dep. 26-1 at 99:9-16, ECF No. 26-1 at 100.) Furthermore, the comments Plaintiff identified were only some of the numerous negative comments contained in that evaluation. (See ECF No. 25-8 at 32-41.) Taken in context, therefore, Plaintiff's citations regarding the claimed "corrective action" provide at most "a mere 'scintilla' of evidence in support of the non-moving party's position[, which] is insufficient to defeat summary judgment." Tingle, 692 F.3d at 529.

Finally, Plaintiff contends that she received no written warnings from April 27, 2010, when she received a negative performance evaluation, until her termination in September of

2010.  (Pl.'s Resp., ECF No. 26 at 10-11.)  Plaintiff argues that "[n]o other instances occurred during that time lapse of five months, adding suspicion as to the true cause of Bell's termination."  (<u>Id.</u> at 11.)  Plaintiff mischaracterizes the record.  It is undisputed that "[t]he last event causing Ms. Bacon and Ms. Thorne to seek Human Resources approval of termination" of Plaintiff was a breach of sterile technique while Plaintiff attempted to prime a needle for a port-a-cath. (Undisputed Facts, ECF No. 25-1, ¶ 24.)  It is also undisputed that this incident was documented in a three-page summary prepared for Corporate Human Resources.  (<u>Id.</u> ¶ 25.)  That three-page summary indicates that the incident occurred on August 20, 2010.  (Bacon Decl. Ex. A, ECF No. 25-3 at 11.) Therefore, the evidence in the record directly contradicts Plaintiff's assertion:  there was a documented incident in the five-month period before Plaintiff's termination.

In summary, in light of the undisputed facts, and the record provided to the Court, Plaintiff's citations regarding Defendant's documentation do not "set forth specific facts showing a triable issue of material fact."  See <u>Mosholder</u>, 679 F.3d at 448-49.

### ii. Plaintiff's Citations Regarding the Training and Resources Received by Plaintiff Are Insufficient To Show a Triable Issue of Material Fact.

Plaintiff cites to Thorne's deposition to suggest that Plaintiff did not receive certain types of training or resources.[7] (See Pl.'s Resp., ECF No. 26.)

Regarding training, Plaintiff claims that she has no documentation indicating that she received training at orientation or that she received annual training. (Pl.'s Resp., ECF No. 26 at 4-5.) Regarding resources, Plaintiff claims that she was not referred to a "super user" or a "staff educator" to help her address her problems in performing her employment duties. (Id. at 7-8.)

Those citations to the deposition, however, do not suggest that orientation or annual training was necessary to be qualified to perform Plaintiff's job, or that referring Plaintiff to a "super user" or a "staff educator" was appropriate.

Furthermore, regarding training, the Plaintiff's citations merely show that there may be evidence showing that Plaintiff has received the training, but that Plaintiff has not received those records. (See Pl.'s Resp., ECF No. 26, at 4-5.) If

---

[7] Possibly related to those contentions is Plaintiff's assertion that she "asked for a transfer out of Same Day Surgery but was denied." (Pl.'s Resp., ECF No. 26, at 8-9.) Plaintiff's assertion, however, is not supported by the record. Plaintiff's citation to the record does not support this assertion (see id.), and Plaintiff testified in her deposition that she did not seek a transfer (Bell Dep. 189:5-7, ECF No. 27-2 at 4).

anything, this shows that Plaintiff has not diligently pursued discovery, so the Court will not give any weight to Plaintiff's claims about what that documentation may or may not show.  See Schaffer by Schaffer v. A.O. Smith Harvestore Prods., Inc., 74 F.3d 722, 731-32 (6th Cir. 1996).

As a result, to the extent those citations are meant to indicate that Plaintiff was otherwise qualified for her employment with Defendant, those citations do not "set forth specific facts showing a triable issue of material fact."  See Mosholder, 679 F.3d at 448-49.

### iii. Plaintiff's Citations Regarding Timely Performance Are Insufficient To Show a Triable Issue of Material Fact.

Plaintiff cites to Thorne's deposition to suggest that Plaintiff was able to perform her duties in a timely manner. (See Pl.'s Resp., ECF No. 26.)

First, Plaintiff adds up Thorne's estimates of how long it would take to perform a number of tasks that may be part of the admissions process.  (Pl.'s Resp., ECF No. 26, at 6-7.) Plaintiff argues that those citations show that she "was held to a higher standard than other nurses by limiting her to thirty minutes for admitting a patient to Same Day Surgery."  (Id. at 7.)

Plaintiff's citations to Thorne's deposition testimony, however, do not support the assertion that Plaintiff was held to

a higher standard than other nurses.  Plaintiff merely shows
that the admission process could take longer in some
hypothetical situation; there is no indication that Plaintiff
was sanctioned, and other nurses were not, when taking the same
amount of time to complete a similar admissions process.
Plaintiff's citations to the record indicating that preadmission
testing could take a certain amount of time in some hypothetical
situation do not "set forth specific facts showing a triable
issue of material fact."  Mosholder, 679 F.3d at 488-89.

       Second, Plaintiff cites deposition testimony indicating
that the specific number of minutes that Plaintiff should spend
with each patient is not specified in either Plaintiff's job
description or the written warning she received on July 10,
2009.  (Pl.'s Resp., ECF No. 26, at 7; see also ECF No. 25-8
at 26-27.)  Plaintiff does not say what inference she wants the
Court to draw from this evidence.  The Court, therefore, infers
that Plaintiff meant to suggest that she had no way of knowing
what was expected of her, and that she was capable of performing
preadmission testing in a timely manner if told what she needed
to do.

       The undisputed facts belie Plaintiff's evidence.  It is
undisputed that one of Plaintiff's employment duties was
"performing all pre-admission procedures and tasks promptly so
as to maintain the pace of the unit's work flow and daily

schedule of surgeries." (Undisputed Facts, ECF No. 25-1, ¶ 11.) It is also undisputed that Plaintiff was given a negative evaluation in 2010 because, in part, she could not consistently keep up with the pace set by her coworkers. (See id. ¶ 20; see also Bacon Decl. ¶ 7, ECF No. 25-3 at 4-5; Performance Evaluation Summary, ECF No. 25-9.) Furthermore, it is undisputed that Plaintiff was given informal counseling and written warnings about her performance over the five-year period preceding her termination. (Undisputed Facts, ECF No. 25-1, ¶¶ 15-25.) While inferences must be drawn in a light most favorable to the nonmoving party, the Court does not need to ignore the undisputed facts. See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 589 (6th Cir. 2003). Given the undisputed facts, it is unreasonable to infer that Plaintiff did not know what was required of her; rather, it is clear that Plaintiff was simply unable consistently to perform her duties in a timely manner.

In summary, Plaintiff's citations regarding timeliness do not "set forth specific facts showing a triable issue of material fact." See Mosholder, 679 F.3d at 448-49.

### iv. Even Taken Together, Plaintiff's Citations Are Insufficient To Show a Triable Issue of Material Fact.

Plaintiff's citations to Thorne's deposition testimony are neither accurate nor persuasive. At most, Plaintiff has

provided "a mere 'scintilla' of evidence in support of the non-moving party's position[, which] is insufficient to defeat summary judgment." <u>Tingle</u>, 692 F.3d at 529.

### 3.   Defendant Is Entitled to Summary Judgment Regarding Plaintiff's Remaining ADA Claims.

Plaintiff has not met her summary-judgment burden regarding whether Plaintiff was otherwise qualified for her employment position. <u>See</u> discussion <u>supra</u> Part III.B.2.b.  The Court, therefore, finds that it is undisputed that Plaintiff was not otherwise qualified for her employment position. <u>See</u> Fed. R. Civ. P. 56(e)(2).  Since Plaintiff was not otherwise qualified for her employment position, regardless of whether she relies on direct or indirect evidence, Plaintiff cannot establish a prima facie claim of discrimination under the ADA.  <u>See, e.g.</u>, <u>Whitfield</u>, 639 F.3d at 258-59 (indirect evidence); <u>Kleiber</u>, 485 F.3d at 869 (direct evidence).  As a result, Plaintiff "fails to make a sufficient showing of an essential element of [her] case on which [she] bears the burden of proof . . . [so] summary judgment is proper" regarding Plaintiff's remaining ADA claims. <u>Chapman</u>, 670 F.3d at 680; <u>see also</u> Fed. R. Civ. P. 56(e)(3).

## IV.  CONCLUSION

For the reasons stated above, Defendant is entitled to summary judgment regarding Plaintiff's remaining claims. Plaintiff has abandoned any claims pursuant to the THRA that

accrued on or after September 1, 2010.  Plaintiff has failed to meet her summary-judgment burden regarding any claims of discrimination pursuant to the ADA that accrued after December 8, 2009.  Therefore, Defendant's Motion for Summary Judgment (ECF No. 25) is GRANTED.

       **IT IS SO ORDERED,** this 28th day of January, 2013.

                                           /s/ Jon P. McCalla
                                         JON P. McCALLA
                                         CHIEF U.S. DISTRICT JUDGE